<u>**NOT FOR PUBLICATION**</u>                                                                                                [29,39]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| AMEC CIVIL, LLC, | : |
|                   Plaintiff, | :  Civil Action No.06-64 (FLW) |
| v. | : |
| DMJM HARRIS, INC., | :  **OPINION** |
|                   Defendant. | : |

<u>**WOLFSON, United States District Judge**</u>:

      Presently before the Court is a Motion pursuant to Local Civil Rule 7.1(i) by Defendant, DMJM Harris, Inc., ("DMJM"), seeking reconsideration of this Court's October 23, 2006 Order denying Defendant's Motion to Dismiss. Specifically, DMJM argues that reconsideration is necessary to avoid manifest injustice. In addition, Plaintiff, AMEC Civil, LLC, ("AMEC") has filed a Motion to Strike Affirmative Defenses. The Court has considered the moving, opposition and reply papers, and for the reasons stated in the opinion below, Defendant's Motion is denied and Plaintiff's Motion is granted in part and denied in part.

**I. Background**

      On January 6, 2006, AMEC filed a Complaint against DMJM alleging professional

negligence arising out of the design of the Shark River Bridge Project in Monmouth County, New Jersey. On July 21, 2006, DMJM filed a Motion to Dismiss contending: (1) that dismissal was appropriate because NJDOT was an indispensable party who could not be joined pursuant to Fed. R. Civ. P. 19;(2) that the Court should abstain from exercising jurisdiction pursuant to the Colorado River Abstention Doctrine; and (3) that AMEC failed to plead properly plead diversity jurisdiction.

Following a hearing on October 23, 2006, this Court denied DMJM's Motion to Dismiss finding that there was diversity jurisdiction, that the Colorado River Abstention Doctrine was not applicable and that the New Jersey Department of Transportation ("NJDOT") was not an indispensable party. Specifically, the Court was not convinced by DMJM's argument that if AMEC were allowed to proceed against NJDOT in state court and against DMJM in federal court, DMJM would be subject to inconsistent obligations. In an attempt to address DMJM's concerns, I suggested that the parties work together to fashion an order that would minimize any potential inconsistent obligations that DMJM contended could occur. The parties, however, could not agree on an order and none has been entered as of this date.

Thereafter, on November 6, 2006, Defendant DMJM filed the instant Motion for Reconsideration pursuant to Local Rule 7.1(i). DMJM argues that this Court should reconsider its October 23, 2006 Order to prevent manifest injustice. Specifically, DMJM contends that this Court should dismiss this matter because the actions in "State Court and Federal Court are virtually identical" and that if both actions "are allowed to proceed there will be an enormous duplication of evidence; months of trial testimony in both actions will be identical; and the risk to DMJM of inconsistent obligations will be enormous ." DMJM Br. at 2.

Subsequently, on November 13, 2006, DMJM filed an Answer to AMEC's Complaint and set forth twenty affirmative defenses including: " <u>First Affirmative Defense</u>: The Court lacks jurisdiction over the controversy. . . <u>Sixteenth Affirmative Defense</u>: The Complaint is barred as plaintiff has failed to join necessary and indispensable parties.  <u>Seventeenth Affirmative Defense</u>: Plaintiff has no right pursuant to statute or otherwise to recover attorney's fees. . . <u>Twentieth Affirmative Defense</u>: DMJM reserves the right to rely on such other and further affirmative defenses as may be supported by facts to be determined through full and complete discovery to amend its answer to assert such other affirmative defenses." DMJM Ans.  Thereafter, on December 4, 2006, AMEC filed a Motion to Strike the four affirmative defenses quoted above.

**II. Discussion**

A. <u>Motion for Reconsideration</u>

Local Civil Rule 7.1(i) allows a party to seek reconsideration if there are "matter[s] or controlling decisions which the party believes the Judge… has overlooked" within ten business days following the entry of the order or judgment on the original motion.  <u>L. Civ. R.</u> 7.1(I).  It is improper on a motion for reconsideration to "ask the Court to rethink what it had already thought through -- rightly or wrongly."  <u>Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co.</u>, 744 F. Supp. 1311, 1314 (D.N.J. 1990). Rule 7.1(i) does not contemplate a recapitulation of arguments considered by the court before rendering its decision. See <u>Bermingham v. Sony Corp. of Am., Inc.</u>, 820 F.Supp. 834, 856 (D.N.J.1992), <u>aff'd</u>, 37 F.3d 1485 (3d Cir.1994); <u>Carteret Sav. Bank, F.A. v. Shushan</u>, 721 F.Supp. 705, 709 (D.N.J.1989).  Instead, Local Civil Rule 7.1(i) creates a procedure by which a court may reconsider its decision upon a showing that dispositive factual

matters or controlling decisions of law were overlooked by the court in reaching its prior decision. See Bryan v. Shah, 351 F.Supp.2d 295, 297 (D.N.J.2 005); Bowers v. Nat'l Collegiate Athletic Assoc., 130 F.Supp.2d 610, 612 (D.N.J.2001).  It is well-established that a court may only grant a motion for reconsideration if the movant can show: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not previously available; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir.1999).  In other words, the movant may address only matters that were presented to the Court, but were not considered by the Court in making the decision at issue. United States v. Compaction Sys. Corp., 88 F.Supp.2d 339, 345 (D.N.J.1999). Because reconsideration is "an extraordinary remedy," it is "to be granted "very sparingly." See NL Indus. Inc. v. Commercial Union Ins. Co., 935 F.Supp. 513, 516 (D.N.J.1996); Maldonado v. Lucca, 636 F.Supp. 621, 630 (D.N.J.1986).  Indeed, a party asserting a difference of opinion with a court's decision should not bring a motion for reconsideration; instead, he or she should seek relief through the normal appellate process. Chicosky v. Presbyterian Med. Ctr., 979 F.Supp. 316, 318 (D.N.J.1997); Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F.Supp. 159, 163 (D.N.J.1988).

     In the instant matter, DMJM argues that this Court should reconsider its October 23, 2006 Order denying DMJM's Motion to Dismiss.  Specifically, DMJM contends that this Court must dismiss the action, or, in the alternative, enter DMJM's Proposed Order, to prevent manifest injustice including the duplication of litigation and DMJM's substantial risk of inconsistent obligations.  DMJM Br. at 2.  AMEC, on the other hand, argues that the instant Motion for Reconsideration should be denied because it merely reargues the issues that were already ruled

4

upon. The Court agrees.

To begin, DMJM argues that this Court must dismiss the instant matter to avoid duplicative litigation and inconsistent obligations. To support the contention that the Federal action will "mimic" the evidence and issues to be litigated in the State Court action, DMJM provides the Court with a chart comparing the allegations in the State Court complaint with allegations set forth in this action. However, the Court already considered and disposed of this exact issue. Indeed, at the October 23, 2006 hearing, the Court heard lengthy argument by the parties concerning the alleged similarities in both the state and federal court matters. Although I acknowledged the possibility for a substantial overlap in issues and discovery, I noted the absence of case law supporting DMJM's position that this constitutes a reasons to dismiss because judicial economy is not dispositive under a Rule 19 analysis; for those reasons, I denied DMJM's Motion to Dismiss. At this juncture, DMJM has not set forth anything else to substantiate the claim that manifest injustice will occur if the federal action is allowed to proceed. Indeed, DMJM has failed to do anything more than rehash the same arguments it advanced in its Motion to Dismiss. In addition, on January 5, 2007, the Honorable John J. Hughes entered a scheduling Order that accounted for various discovery issues and minimized the potential for duplicative litigation. Thus, DMJM's Motion for Reconsideration pursuant to Local R. 7.1(i) is denied.

In the alternative, DMJM argues that the Court should enter its Proposed Order to protect it from inconsistent obligations. The Court does not agree. The fact that the parties have failed to agree upon an Order is entirely independent of this Court's ruling on DMJM's Motion to Dismiss or its subsequent Motion for Reconsideration. Although I suggested that DMJM and

AMEC work together to draft an order that would protect DMJM from potentially inconsistent obligations based on the state and federal actions, the failure of the parties to do so is not related to my ruling on DMJM's Motion to Dismiss. Indeed, I placed the burden on DMJM to come up with a scenario in which an inconsistent award could result and even noted that if none could be suggested, then perhaps that was proof that no such potentiality existed. Motion Tr. 75: 9-14, October 23, 2006 ("[Y]ou people can work on whatever you want to fashion that you think would deal with the issue that you raised, an inconsistent obligation. It may be when you start doing this, that you won't be able to come up with one because maybe there isn't one?"). Furthermore, what DMJM did propose by way of Order did not address the potential inconsistent obligations, but rather noted the following:

> Whereas, DMJM would be left with a substantial risk of incurring double, multiple or otherwise inconsistent obligations if AMEC litigates the same underlying claims with the same damages in the Federal Court Action against DMJM and against NJDOT in State Court Action. . . IT IS HEREBY ORDERED THAT, AMEC shall not assert against DMUM and its subconsultants. . . in the Federal Court Action the same or substantially similar claims that it is asserting against NJDOT in the State Court Action. It is Further ORDERED that, AMEC shall not seek to recover the same damages from DMJM and its subconsultants. . . that it seeks to recover from NJDOT in the State Court Action. . . [and] THAT any witness deposed by AMEC in the State Court Action shall not be deposed by AMEC in the Federal Court Action.

Hegarty Cert., ex. G.

Because the Proposed Order does not provide for specific scenarios as suggested by the Court and because the parties could not agree on any Order, this is not an appropriate matter for this Motion for Reconsideration.

Finally, the Court notes that AMEC's Opposition Brief contains an informal request for

sanctions pursuant to Fed. R. Civ. P. 11 based on DMJM's filing of the instant Motion for Reconsideration. Rule 11(c)(1)(A) provides that "[a] motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected."  Substantively, rule 11 allows for "the imposition of sanctions when a motion is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." Spring Creek Holding Co., Inc. v. Keith, 2006 WL 2715148 (D.N.J. 2006) (quoting Warren v. Guelker, 29 F.3d 1386, 1388 (9th Cir.1994)).  Rule 11 sanctions are based on "an objective standard of reasonableness under the circumstances." Martin v. Brown, 63 F.3d 1252, 1264 (3d Cir.1995) (quoting Landon v. Hunt, 938 F.2d 450, 453 n. 3 (3d Cir.1991)).  The imposition of Rule 11 sanctions is reserved for only exceptional circumstances in which the claim or motion is patently unmeritorious or frivolous. Ford Motor Co. v. Summit Motor Prods., 930 F.2d 277, 289 (3d Cir.1991) (citation omitted).  Therefore, in considering a motion to impose sanctions under Rule 11, the Court must determine that (1) the claims are objectively frivolous, and (2) the person who signed the pleadings or other papers should have been aware that they were frivolous. Baker v. Alderman, 158 F.3d 516, 524 (11th Cir.1998).

  Although AMEC has not made a proper request for sanctions, this Court has considered the merits of the underlying motion and finds that the sanctions are not warranted. As discussed above, in this matter, DMJM argues that the Court should reconsider its October 23, 2006 Order

pursuant to Local Civ. R. 7.1(i) to avoid manifest injustice. Although I do not agree with DMJM's arguments, I cannot find that DMJM's allegations were patently unmeritorious or frivolous. Indeed, although DMJM is not able to persuade this Court that it would be subject to inconsistent obligations, it is inconceivable that the proper filing of a Motion for Reconsideration in a complex case such as this should subject DMJM to sanctions. Thus, Rule 11 sanctions are not warranted here.

B. Motion to Strike Affirmative Defenses

In addition, on December 4, 2006, AMEC filed a Motion to Strike Affirmative Defenses pursuant to Fed. R. Civ. P. 12(f). Rule 12(f) provides that a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion to strike under Rule 12(f) eliminates insufficient defenses and saves the time and expense of litigating issues that ultimately would not affect the outcome of the case. United States v. Geppert Bros., Inc., 638 F.Supp. 996, 998 (E.D.Pa.1986) (citing Narragansett Tribe v. Southern Rhode Island Land Dev. Corp., 418 F.Supp. 798, 801 (D.R.I.1976)). In general, a court possesses considerable discretion to dispose of a motion to strike under Rule 12(f). River Road Dev. Corp. v. Carlson Corp., 1990 WL 69085 at *2 (E.D.Pa.1990). However, motions to strike are not favored and will typically be denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." Id.

In the instant matter, AMEC argues that this Court must strike the following four Affirmative Defenses: "First Affirmative Defense: The Court lacks jurisdiction over the

controversy. . . <u>Sixteenth Affirmative Defense</u>: The Complaint is barred as plaintiff has failed to join necessary and indispensable parties.  <u>Seventeenth Affirmative Defense</u>: Plaintiff has no right pursuant to statute or otherwise to recover attorney's fees. . . <u>Twentieth Affirmative Defense</u>: DMJM reserves the right to rely on such other and further affirmative defenses as may be supported by facts to be determined through full and complete discovery to amend its answer to assert such other affirmative defenses."  Specifically, AMEC argues that Defenses 1 and 16 should be stricken because they were already decided by this Court and that Defenses 17 and 20 should be stricken because they are not proper affirmative defenses.

      DMJM, on the other hand, contends that it has no objection to striking its First Affirmative Defense as long as it retains the ability to amend its Answer pending the outcome of discovery.  In addition, DMJM argues that Defense 16 should not be stricken because discovery could reveal other necessary and indispensable parties.  Finally, DMJM contends that Defenses 17 and 20 should not be stricken because AMEC has not established that it is prejudiced by these allegedly insufficient affirmative defenses.

      To begin, in light of the fact that Defenses 1 and 16 were already decided by this Court, I will strike DMJM's First and Sixteenth Affirmative Defenses; however, I will permit DMJM the opportunity to amend should discovery reveal that jurisdiction is lacking or that there is a  party subject to analysis under Fed. R. Civ. P. 19.  In addition, the Court will strike DMJM's Twentieth Affirmative Defense for not setting forth a defense at all.  According to Black's Law Dictionary, an affirmative defense is defined as "[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's. . .claim, even if all allegations in the complaint are true."  <u>Black's Law Dictionary</u> 430 (Seventh Ed. 1999).  DMJM's Twentieth Affirmative

Defense, however, simply reserves the right to rely on other affirmative defenses that may be determined through discovery. As discussed above, this Court will permit DMJM to amend should discovery reveal the existence of new defenses. Thus, it is appropriate at this juncture to strike DMJM's Twentieth Defense.

Finally, however, the Court will not strike DMJM's Seventeenth Defense. The Court finds that DMJM's statement regarding attorney's fees presents an argument that could defeat Plaintiff's claim for fees. Thus, in the absence of any evidence that this defense is irrelevant or prejudicial, the Court will let this Seventeenth Defense stand.

### III. Conclusion

For the foregoing reasons, Defendant's Motion for Reconsideration pursuant to L. Civ. R. 7.1(i) is denied. In addition, Plaintiff's Motion to Strike Affirmative Defenses is granted in part and denied in part. An appropriate order will follow.

Dated: February 6, 2007                     s/ Freda L. Wolfson
                                                    Honorable Freda L. Wolfson
                                                    United States District Judge